May it please the court, Carolyn Wiggin from the Federal Defender's Office for Mr. Fuller and I will try to reserve two minutes if I can. The simple and straightforward reason this order needs to be reversed is that it is grounded in an erroneous estimate. The court's interpretation of cell, when the first prong of the cell test is analyzed, the district court has to look at whether the person has done so much time in pretrial custody or will do so by the time they could possibly be painted into confidence. Scalia. You're right. But that's not a – that's not a determinative, right? Our cases have said even if you've been kept in pretrial custody up until the time of a Guidelines sentence or through it, that's a factor to take into account, but it's not determinative, correct? I'm sorry, are you – we're having difficulty hearing you. Okay. A tech person, if it's – if that's appropriate, is it – Well, no, let me ask the question again so we're clear. Our cases say you should take into account how long the defendant has been kept in custody, but that even if the defendant has been kept in custody up and through the time that a Guidelines sentence would suggest, that doesn't automatically require that the charges be dismissed. Do you agree with that? Baja is a case where that happened. There was another reason that this court thought it would be appropriate to medicate. However, that weighing of the Guidelines versus how much time they've done has to be accurate. And here, a judge – the district judge not only erroneously said there's a range of 30 to 57 months, which isn't a range in the Guidelines. She also said Mr. Fuller is looking at several months and possibly several years if he's convicted of this. And under the government's assessment of Guidelines, could he be looking at several years? Well, didn't the judge – the judge did say at some point 30 to 57. I agree with you. But they also said 30 to 37 at some point. And that seemed to be – so let's assume it's 30 to 37. Why here were your client had not quite gotten there? He would have been in custody for 29 months. Why here do the other factors, whatever other special circumstances there are, the way the cases are phrased, there can be extenuating circumstances. What were the extenuating circumstances? In a status conference, she said even if the defense is right about the range, she thought the government met the first point. But after the hearing and in the final order, she says 30 to 57 months. I understand. I understand. But she did say even if the government is right, 30 to 37, I'm – I still think it's an appropriate sentence. So tell me why she was wrong – of appropriate denial of your request to dismiss. So tell me why Judge Miller was wrong about that. She also gave no consideration to the very high likelihood of civil commitment here. Oh, good. Thank you, because that's what I was trying to get you to. So tell me why I can tell from this record there's a high likelihood of civil commitment. In the cases in which we found it, some expert has come in – or at least the cases in which we've tried to weigh it, some expert has come in and said, I'm a psychiatrist and I've examined this person and he's a danger to himself or others, and therefore there's liable to be civil commitment afterwards. There's none of that here. So how can I find that the judge erred in not taking into account a high likelihood of civil commitment in the absence of evidence on that topic? I believe, starting with Stella and going forward, there is usually not an actual hearing beforehand about whether – No, no, but there could be an affidavit. There could be a submission. There could be something from your side – you have the burden, I think, to get charges dismissed – that says this person is liable to be civilly committed at the end of it. And here, I guess you're asking us to infer that from the record, and I'm trying to figure out how we do that. Finding that he would be civilly committed, but the Supreme Court said you have to look at that possibility. It's actually the government that bears the burden of proving the first prong by clearing – Right, but the government does prove the first prong. It says this is a serious offense. That's the first prong. The guideline sentence is 30 to 37, fairly serious offense. The facts are fairly serious. Important governmental interests are at stake because we don't want people assaulting federal officers. And then now the question is, are there circumstances that cut the other way? And you're saying the circumstance that cuts the other way is the fact that he may be civilly committed. And I'm asking, how is the district judge supposed to know that? Should she assume it? Must there be some evidence in the record? How does she get there? I think she should have that. Mr. Fuller, we know that he had a previous case where he was not confident. We know throughout the government has been talking about what a danger he is. This is the reason he's shackled. This is the reason he's housed separately. So he has a history of mental illness, and the government perceiving him as a danger, and, you know, allegations that I think it happened not entirely. Counsel, you suggested you wanted to say three minutes rebuttal. I'm just going to remind you, but you should go ahead if you want to keep. And I will just try as much time as possible. I'll add that, you know, I think Peter was able to show that it takes this case seriously by denying him for a felony, issuing press releases which were picked up, and it held him for now what is probably longer than he could ever be sentenced to. I don't have the rest of my time, but that is my reason for saying the government did not establish the first part of that clear evidence. Judge Erickson's got a question. I have a question that I'd like you to think about. You can answer it in your rebuttal. But a number of the cases that cite the importance of using the guidelines as a proxy for the seriousness of the crime predate the advisory nature of the guidelines. And so I'm just curious whether the firm reliance on a guideline range can be relied on as much now as it could when those cases were decided. And I just wanted to let you know that I'll be interested in hearing about that when you come back. And, Ms. Wiggins, when you come back, we're having some difficulty hearing you. And I don't know whether it's because of the sound system at your end. Specifically, I think what's going on is there's a lag, Ms. Wiggins, and when you start talking, it's almost like your system is giving a two- or three-second lag. So anything important you're saying in that two to three seconds, we're not hearing. So you might just take that into account when you we hear the rest of it okay, I think, but this first couple seconds. Yeah, and I know you're on the next case too. So to the extent that something can be done on your end on that, it would be helpful. And I wonder also if you put the microphone right up to your mouth. We also can't see you very well. We see the room that you're in very well, lovely room. But maybe if you put the microphone right up to your mouth, it would make it easier. When we say we can't hear you, it's not that the words are garbled necessarily. It's that it actually cuts out and we don't hear anything. So as Judge Van Dyke said, it seems to kick in after you've been speaking for a while. But I don't know, hold the microphone closer, that's my only thought. Yeah, we're using this fancy system where my speaker and mic are up there, but I will try to get that resolved. I must say your answer to Judge Erickson right now came through loud and clear. So maybe if you are a little closer to the mic, it will work. Yeah, I'll do that. Thank you. Thank you. I'm a district judge, and I'm used to working with inferior technology. We'll let you save the rest of your time for rebuttal, and we'll hear from the government. Good morning, and may it please the Court, Cameron Dosen on behalf of the United States. The government does have an important interest in prosecuting this case that's not totally undermined by the potential of a time-serve sentence or civil commitment. This was a premeditated violent attack against a government official followed by threats to kill more government officials by someone who had attacked an officer or paramedic just three months earlier. The government has an interest in showing the public that assault and threats against public officials will result predictably in a conviction and a serious consequence of incarceration. Can I ask you the question that Judge Erickson left off with? We seem to be, if not unique, at least in a minority among the circuits in using the guideline sentence as a measure for the seriousness of the crime. And it's a little strange because, of course, we don't have a pre-sentence report or anything else that would normally allow us to think about what the guideline sentence is. And I have two questions about the use of it in this case. The first is the one that Ms. Wiggins was pointing to. The judge does, in her order, I think, mistake the upper range of the guideline sentence. And so tell me how you – what we should do about that. Yes, Your Honor. At the hearing on the first bail factor at FDR in 416, the government conceded the lower guideline range. The court accepted that lower guideline range. And it made a finding at that hearing that with that lower guideline range, the government's interest was significantly important to warrant a bail order. In the order itself, after the evidentiary hearing on the second and fourth factors, she does affirm her prior findings. I believe that prior that the bigger range was allowing for the court determination after PSR of what the guideline range should be. But the important thing is there's just no need to remand on that issue. We already know what the district court would do with the lower guideline range. Let me ask you a second question. In this case, and I may be wrong, the guideline range results in part from prior criminal history. Does it not? Yes, Your Honor. Is that an appropriate measure of the seriousness of the offense? In other words, if the unenhanced, if you will, guideline range is, say, 10 to 15 months, and this particular individual faces a longer sentence because he has a criminal history, should we really be using the enhanced guideline range as a measure of the seriousness of the crime as opposed to other factors that may want to lead us to punish or put this guy away for a longer period of time? Yes, Your Honor. And that goes to the important government interest of protecting the public. As a defendant that has a prior history of crime, especially crimes of this nature, it shows an important reason for supervised relief, as this court highlighted in both Onoaha and Gillingwater. Counsel, can I turn us to the civil commitment issue? And specifically, as I read the other side's position on that, it seems to, you know, the government does bear the burden, the general burden, and I don't think you disagree with that. And on civil commitment, it seems like they are saying that if there's not any other evidence in the record, the government basically needs to go out and prove the negative, that the person won't be civilly committed. Whereas it seems like, I think maybe it was Judge Hurwitz or someone was getting at, in fact, that doesn't seem like what all the cases have done. They've just looked at whatever evidence happened to be in there. What is your view of what the government needs to do? Does the government need to go out and actually show that the person wouldn't be civilly committed, or is it just that the court needs to take into account whatever evidence there is? You know, it could have been put in there by the criminal defendant, could be in there for other reasons. But does the government actually need to get evidence so it can prove that they won't be civilly committed? No, Your Honor. This Court in its precedent and in SEL do not suggest that the government would have to essentially disprove a civil commitment. Is there any case law on that, or is it just, I mean, I didn't necessarily see any cases that directly address that issue. I mean, SEL says that you have to take into account civil commitment. But the specific issue of, like, how the government's burden interplays with that, I'm a little, is it kind of an open issue, or? It's not an issue that's been, I've found, directly addressed by the court. In Onawaho and in Gillenwater, this court did hold that without evidence presented, the district court did not err. Well, yeah. That's exactly our question. That's right. But the question I think Judge Van Dyke is asking, and I think our cases don't address it, is whose burden is it to bring forth evidence? In Gillenwater, apparently, experts did testify. And this court said, well, none of those experts opined concerning civil commitment, so we can't say the district judge was wrong in not viewing civil commitment as, in effect, a mitigating factor. But so apparently there were experts presented in that case. But whose burden is it to present those experts? Your Honor, it's the government's burden to present experts to satisfy the second, third, and fourth cell factors. So you have to put on an expert, obviously, to say that the defendant would be restored to competence if he were to take these drugs. I take it those are people with psychiatric or psychological experience. Why shouldn't we also ask the government to put on evidence about the prospect of civil commitment under those circumstances, since you have the burden of putting forth expert evidence anyway? Your Honor, that would create many practical concerns. One would be it would obviously delay the proceedings. We would have both parties arguing opposite things. The government would have to argue. But it wouldn't delay the proceedings if the burden were on the other side. They'd have to come in with the expert, and you'd have to respond to it. So I'm just asking, whose burden is it? Under either scenario, once evidence is presented, the other side will want to respond. Because it's a mitigating factor that undermines the government's interest, it would be the defense's burden to point out in the record where their civil commitment is not speculative. In Grigsby, a case cited by the defense, the court had a lot of evidence presented. There was evidence presented not just of civil commitment in the danger context, but in the insanity context. And there's just no facts here to suggest that Mr. Fuller didn't understand the wrongfulness of his conduct. Counsel, how would, I guess as a practical matter, I guess what I'm wondering is how would the government meet its burden if we put the burden on the government to prove that they wouldn't be civilly committed? It seems like most of the time that would be fairly speculative. That's kind of where my question was getting at. I don't know what the government, I understand that if there's evidence in the record either put on by the defendant or for some other reason that the person will likely be civilly committed, then that should probably, that needs to be taken into account under cell. I'm trying to figure out how the opposite of that, if there's no evidence, how the government would, and maybe it's a question more for your opposing counsel, but I don't know how the government could sort of prove one way or the other. It seems like it would be inherently speculative. Agreed, Your Honor, and it's speculative. Circumstances could change. The defense could begin taking his medication. It's speculative in the length of the civil commitment. But, yes, Your Honor, I believe that in this case the district court did not err on that fact when it follows the precedent under O'Rourke and Gilliland. Sorry to interrupt you. Ms. Desmond, the possibility of civil commitment as articulated under cell is a factor, correct, in the first analysis, the first part of the analysis, and did the court say that it is one among many factors or did it say that it must be taken into consideration sort of on the order of an element, if you will? If it's one of many factors, then that would have an impact on whether we put a separate burden on that one factor among many factors as opposed to if it's something that actually has to be addressed. So in your reading of cell and this court's cases post-cell, which of those two is the civil commitment? Is it like an element or is it one of many factors? It's one of many factors, Your Honor. It's in consideration with how much time served the defendant has spent, and then you also look to the weight of the importance of the government interest. So it's all of those things together that would determine whether the first factor under cell has been met. And I think we've been pretty clear in discouraging district courts from looking at dangerousness, and of course dangerousness is an important factor in the civil commitment analysis, so that also makes me nervous in terms of giving direction to district courts to focus on the dangerousness in connection with any of the factors. It sort of cuts both ways. People are civilly committed because they're a danger to themselves or others, but it is important to protect the public against dangerous people. So I'm just not sure how much we can infer from dangerousness in a case like this. That's not a question, but if you want to answer it, you can. Your Honor, I will just say that there is a distinction. The defense raised this in its reply brief. There is a distinction between medicating someone because they're a danger and finding an important government interest in part because they're a danger. That second argument is allowed under cell. The first is not. But you're not proposing to medicate Mr. Fuller because he's a danger. You're proposing to medicate him to restore him to competence, right? Correct, Your Honor. Okay, we've taken you a little bit over. Ms. Wiggins, you should have a couple of minutes for rebuttal. Thank you. I think we got the picture a little better. I'm going to try to speak up into the microphone. The audio is good too, so proceed. Okay, great. I wanted to first judge Erickson's question at the end of my opening about now the guidelines are advisory. So, Booker was decided in 2005, and most of the case has posted into that. In 2008, in Hernandez-Vest, this court said in doing that first prong, look at the advisory guidelines. Advisory in a district court could decide at a cell hearing, I know I'm going to vary up or vary down, that most of the time district courts will be able to use that guideline range as a pretty solid estimate of where the sentence might end. And so I think it is still an appropriate test. And this court has advocated for it after Booker. I shouldn't say advocated, it has held that it should be used after Booker. Due to the likelihood of civil commitment, I think the Supreme Court listed it specifically as something that could mitigate the government's. Could you respond to the question we asked your friend? How do we get evidence in front of us or in front of the district judge from which she can make reasonable findings on that? It's a little bit strange to ask the government to come in and negative the possibility of civil commitment. And apparently in Gillinwater, there was some expert evidence one way or the other. How do we, in terms of running these proceedings in the future, what do we tell people? How does the civil commitment evidence get in the record? A look at the civil commitment of the code, I think it's 4246. No, I know what the law says, but how do we, we're going to have to judge these in individual cases and we're going to have to make a determination about whether or not there's a prospect of civil commitment for a particular defendant. And we start off with the notion that all these defendants have some mental disorder because they're not competent to stand trial. So how do we get from there to civil commitment? Who puts what evidence in the record and how does the judge evaluate it? And since this is a question on the next case too, I'll give you a little bit of extra time to answer it. Okay. In the next case, I really don't say there's a likelihood of civil commitment because I think you look at the evidence both parties put together and you say is there a mental health issue, an ongoing mental, makes someone a danger to themselves and the community. Isn't it the case that a person could be likely to be civilly committed but have committed a crime so serious that the government's interest would allow undersell for medication for a criminal trial, even though there is a high likelihood that the person ultimately would be civilly committed? I think you could have that. I'm just saying the district court has to statistically assess that factor. But they could say they think they will be. There's something about this case, as in Onwaha, where it's like there's something about a threat of terrorism on the eve of 9-11. Right. My point, so I'm only seeking to see if you agree with the proposition that the district court's job is not to weigh is this person, should they be medicated or should they be civilly committed. That's not the test. No. I think we've taken you over, but it's been a very good argument on both sides, and we will submit this case, and I think we have a new assistant U.S. attorney in the next one. Move on to Slavin.
judges: HURWITZ, VANDYKE, Ericksen